IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL LIABILITY & FIRE INSURANCE CO., | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 15-5449 (JBS/KMW) |
| V. | |
| LP TRUCKING, LLC, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Diana M. Hendry, Esq.
John T. Coyne, Esq.
MCELROY, DEUTCH, MULVANEY & CARPENTER, LLP
1330 Mount Kemble Ave.
PO Box 2075
Morristown, NJ 07962
     Attorneys for Plaintiff

Richard M. Pescatore, Esq.
1055 East Landis Ave.
Vineland, NJ 08360-4041
     Attorney for Defendants

**SIMANDLE, District Judge:**

**I.    INTRODUCTION**

Presently before the Court are the motions for summary judgment by Plaintiff National Liability & Fire Insurance Co. (hereinafter, "Plaintiff" or "NLF") [Docket Item 38], as well as Defendants' LP Trucking, LLC (hereinafter, "LP Trucking") and Lionel Powell (hereinafter, "Defendant Powell")(collectively,

"Defendants") motion to dismiss Plaintiff's Complaint [Docket Item 56.][1] Having considered the parties' submissions and oral argument, for the reasons set forth below, the Court will grant Defendants' motion to dismiss because it lacks declaratory judgment jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff's motion for summary judgment will therefore be dismissed without prejudice.

## II. BACKGROUND[2]

This insurance coverage dispute between NLF and Defendants arose out of a purported cancellation of a truckers insurance policy by Defendants' agent, Lasting Legacy.[3] NLF issued the policy to LP Trucking that incepted on May 23, 2014. (Compl. at ¶ 13.) The quoted premium for the policy was $14,380, which was based on Defendant Powell's representation that he had zero motor vehicle points, but after the policy was issued, NLF determined that Powell actually had seven motor vehicle points, so NLF adjusted the premium to $28,321. (Id. at ¶¶ 15-17.) Lasting Legacy and Defendant Powell requested that NLF

---

[1] The Court will also address Defendant's motion "granting leave to defendant to supplement previous opposition." [Docket Item 64.]

[2] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiffs' Complaint, documents explicitly relied upon in the Complaint, and matters of public record. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

[3] The parties are diverse under 28 U.S.C. § 1332.

reevaluate the magnitude of the premium increase, and NLF then revised the premium amount to $23,194. (Id. at ¶ 19.) Defendants, apparently unwilling to pay the adjusted premium of $23,194, opted to cancel the policy via a cancellation request on June 10, 2014. (Id. at ¶¶ 20, 22.) Lasting Legacy, Defendants' agent, emailed to the Tuscano Agency, NLF's agent, a cancellation request purported signed by Powell, and in response, NLF cancelled the policy effective at 12:01 a.m. on June 11, 2014. (Id. at ¶¶ 22-24.) Defendants claim that Lasting Legacy fraudulently signed the cancellation form. [Docket Item 56-1 at ¶ 3.]

On June 11, 2014, at approximately 3:30 a.m., Defendant Powell was involved in a motor vehicle accident with Shawn Virgillo, and on July 3, 2014, Virgillo filed an action (hereinafter, "the Underlying Action") against LP Trucking and Powell, among other parties. (Id. at ¶¶ 25, 27.) NLF offered to defend LP Trucking and Powell subject to a written reservation of rights letter dated December 15, 2014. (Id. at ¶ 30.)

On July 10, 2015, Plaintiff filed a one-count Complaint in this Court requesting a declaratory judgment "that the cancellation of the NLF Policy at LP Trucking's request became effective on June 11, 2014 at 12:01 a.m. and that, accordingly, NLF has no obligation to defend or indemnify LP Trucking or Powell against the claims asserted in the Underlying Action or

any other proceedings that may arise from the Accident." (Compl. at ¶ 28.) NLF included LP Trucking, Defendant Powell, and Shawn Virgillo as Defendants in the federal action, but did not include Lasting Legacy.[4]

Then, on November 24, 2015, Powell and LP Trucking filed a complaint in Cumberland County Superior Court against Lasting Legacy, alleging negligence and fraud. Powell and LP Trucking amended their complaint on April 19, 2016, adding Jenna Zeringo as a Defendant. Since neither LP Trucking nor Defendant Powell notified NLF of the underlying action involving Virgillo (Compl. at ¶ 28), LP Trucking's initial state court actions did not include NLF. However, On July 22, 2016, Powell and LP Trucking amended their complaint again and filed a properly styled declaratory judgment action against NLF, Jenna Zeringo, Virgillo, AAA Midlantic, GEICO, NJM a/s/o Mary Dampf, Rochdale Ins. Co. and Western Union Ins. Co. (Ex. C. to Def. MTD Br.)

As the federal court case progressed through discovery and through summary judgment motion practice,[5] ongoing discovery in the state court matter revealed a possibility of a conflict of

---

[4] NLF also included South State, Inc., Rochdale Insurance Company, Government Employees Insurance Company, and Western United Insurance Company, but all of those parties have since been dismissed from this action.
[5] NLF filed a motion for summary judgment on its declaratory judgment claim in this action on September 9, 2016. [Docket Item 38.]

interest. NLF's counsel had participated in the negotiations and
mediation of the underlying action with Virgillo by negotiated
the terms and conditions of a release agreement which included a
payment of nearly $200,000. [Docket Item 56-8 at 26]  NLF then
filed a counterclaim against Powell for reimbursement of the
settlement money "which [NLF counsel] negotiated and . . . had
authorized," despite no language in any of the reservation of
rights letters (Ex. G to Def. MTD Br) regarding the
reimbursement of indemnity monies. [Docket Item 64-6 at 43.]
NLF also filed a motion for summary judgment "based on the
theory of apparent authority." [Docket Item 64-6 at 41.]  The
state court judge held a hearing on Powell's motion to
disqualify counsel and NLF's motion for summary judgment on
January 20, 2017, [Docket Item 64-6 at 39.]

On February 17, 2017, in light of evidence that a lawyer
from NLF's law firm had represented both Powell and NLF, the
state court judge entered an order disqualifying the McElroy
Deutch Mulvaney and Carpenter law firm from representing NLF in
the state court matter because of this alleged conflict of
interest. [Docket Item 54; Docket Item 64-5.][6]  The state court
judge explained that he "has concerns about how this went down

---

[6] The state court judge explained that this conflict of interest
ruling did not affect the federal court action. [Docket Item 64-
6 at 75.]

and [he thinks] they need to get out." [Docket Item 64-5.] NLF
appealed this disqualification ruling, and that appeal is
currently pending in the Appellate Division.  The state court
judge also denied NLF's motion for summary judgment "for several
reasons," given the disqualification of the firm of NLF's
counsel, and that "discovery is still outstanding and ongoing."
[Id.; Ex. B to Docket Item 63.][7]  The judge further found that
"the issues of apparent authority are fact sensitive and . . .
involve issues of intent and credibility which are normally
issues to be decided by the fact finder as opposed to on a
motion for summary judgment." [Ex. B to Docket Item 63.]
Additionally, the judge found that there are issues "with regard
to authenticity of a cancellation notice that no premium refund
occurred after the purported cancellation," and there are issues
"with regard to whether a cancellation notice was faxed to
Powell . . . and back." [Id.]

On February 21, 2017, Defendants then requested that this
Court hold summary judgment in abeyance given the denial of
NLF's summary judgment in the state declaratory judgment action.
[Docket Item 54.]  Then, on March 21, 2017, Defendants filed a
motion to dismiss Plaintiff's Complaint based on the Colorado
River abstention doctrine. [Docket Item 56.]

---

[7] Discovery does not end in the state case until October 25,
2017. [Ex. B to Docket Item 63.]

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1)

As courts of limited jurisdiction, the federal courts may only exercise jurisdiction over cases which the Constitution and Congress expressly grant them power. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010). A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

Under Rule 12(b)(1), the court's jurisdiction may be challenged either facially (based on the legal sufficiency of the claim) or factually (based on the sufficiency of a jurisdictional fact). Gould, 220 F.3d at 178; see also A.D. v. Haddon Heights Bd. of Educ., 90 F. Supp. 3d 326, 334 (D.N.J. 2015) (stating same). In considering a factual attack, as here, the Court need not cabin its inquiry to allegations in the complaint. Rather, the Court may "consider affidavits, depositions, and testimony to resolve factual issues bearing on

jurisdiction." Gotha v. U.S., 115 F.3d 176, 179 (3d Cir. 1997);

see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d

884, 891–92 (3d Cir. 1977).

**B. Rule 56**

With respect to Plaintiff's motion for summary judgment,

Federal Rule of Civil Procedure 56(a) generally provides that

the "court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact" such that

the movant is "entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). A "genuine" dispute of "material" fact exists

where a reasonable jury's review of the evidence could result in

"a verdict for the non-moving party" or where such fact might

otherwise affect the disposition of the litigation. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over

irrelevant or unnecessary facts, however, fail to preclude the

entry of summary judgment. Id. Conclusory, self-serving

submissions cannot alone withstand a motion for summary

judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d

254, 263 (3d Cir. 2012) (internal citations omitted).

In evaluating a motion for summary judgment, the Court must

view the evidence in the light most favorable to the non-moving

party, and must provide that party the benefit of all reasonable

inferences. Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey

v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). However, any

such inferences "must flow directly from admissible evidence
[,]" because "'an inference based upon [] speculation or
conjecture does not create a material factual dispute sufficient
to defeat summary judgment.'" <u>Halsey</u>, 750 F.3d at 287 (quoting
<u>Robertson v. Allied Signal, Inc.</u>, 914 F.2d 360, 382 n. 12 (3d
Cir. 1990); citing <u>Anderson</u>, 477 U.S. at 255).

## IV. DISCUSSION

### A. Defendants' Motion to Dismiss

#### 1. <u>Colorado River</u> abstention

The Court first addresses Defendants' motion to dismiss.
Defendants argue that Plaintiff's Complaint should be dismissed
under the <u>Colorado River</u> abstention doctrine, see <u>Colorado River</u>
<u>Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813
(1976), as Plaintiff's claim here is identical to the one
presented in New Jersey Superior Court. Plaintiff replies that
the Court should not abstain because the suits are not parallel
actions, as the state court case was brought a year after the
federal case.

In general, "federal courts are obligated to decide cases
within the scope of federal jurisdiction." <u>Sprint</u>
<u>Communications, Inc. v. Jacobs</u>, -- U.S. --, 134 S. Ct. 584, 588
(2013). However, "in certain circumstances . . . the prospect
of undue interference with state proceedings counsels against
federal relief." <u>Id.</u> To prevent such interference, various

9

judge-made doctrines of abstention have developed, whereby the federal courts decline to exercise jurisdiction otherwise granted them by the Constitution or federal statute. In Colorado River, the Supreme Court found that abstention might be warranted in some "extraordinary" circumstances where there are parallel state and federal proceedings, under principles of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817.

First, a court must determine whether the two proceedings are "parallel." Two proceedings generally are considered parallel when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues," Yang v. Tsui, 416 F.3d 199, 204 n. 5 (3d Cir. 2005) (citation and internal quotation marks omitted), and when plaintiffs in each forum seek the same remedies, see Harris v. Pernsley, 755 F.2d 338, 346 (3d Cir. 1985). In the state court declaratory judgment action, LP Trucking and Defendant Powell (as Plaintiffs) "seek[] a determination as to the construction and/or validity of the insurance policy issued by the defendant-National and/or the validity or invalidity of an alleged cancellation notice forwarded to the defendant insurance company and, in particular, confirmation of benefits associated with indemnification for a motor vehicle accident." (Ex. C. to Def.

MTD Br. at ¶ 5.) LP Trucking and Powell also alleges that NLF "has breached the terms and conditions of their insurance policy and/or statutory obligations and have failed to honor LP Trucking's request for coverage, including indemnification from and against any and all claims arising out of the underlying motor vehicle accident. (Id., ¶ 6.)

NLF argues that the proceedings are not parallel because the state court case was originally solely a malpractice action against Lasting Legacy, not a declaratory judgment case, and that the state court case includes additional parties not present in the federal court action. (Opp'n at 4-5.) However, LP Trucking properly amended its complaint to include NLF, and the case has proceeded with NLF as a party since July 22, 2016. Currently, both the state and federal actions involve NLF, LP Trucking, and Defendant Powell. While the state court action includes two additional parties, Lasting Legacy and Ms. Zeringo, given that both cases are declaratory judgment actions seeking to determine whether Defendant Powell's cancellation was valid, the Court finds that the parties are sufficiently parallel.[8] See

---

[8] NLF also argues that the actions are not parallel because NLF has no claims at all against Lasting Legacy and Zeringo. But a properly styled declaratory judgment action exists between NLF and LP Trucking/Defendant Powell exists in the state court action, and the existence of Lasting Legacy and Zeringo as parties will not affect the Court's eventual resolution of the apparent authority issue.

IFC Interconsult AG v. Safeguard Intern. Partners, LLC, 438 F.3d 296, 306 (3d Cir. 2006)("We have never required complete identity of parties for abstention."); Perry v. Manor Care, Inc., No. 05-5767, 2006 WL 1997480, at *3 (E.D. Pa. July 14, 2006)(holding that "federal and state cases are sufficiently parallel if all the parties in the federal case are also parties in the state case, even if the state case involves additional parties").

Additionally, state and federal claims are parallel when "the state litigation will dispose of all of the claims raised in the federal case." Spring City Corp v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999). There is no question that resolution of the declaratory judgment action in state court would dispose of the declaratory judgment action in this court. Finally, there is an identity of time between the two actions because both lawsuits arise from the question of apparent authority of Lasting Legacy to cancel Defendant Powell's policy on June 10, 2014, and the resulting reservation of rights from NLF. Given that there are identities of parties, claims and time, the Court finds that the two actions are sufficiently parallel, thereby meeting the first step of Colorado River.

Once a federal court determines that two proceedings are parallel, the Third Circuit instructs the court to consider the following pertinent factors, drawn from the Colorado River case:

"(1) in an in rem case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009).

On balance, the Court finds that abstention under the Colorado River doctrine is not appropriate in this instance. The first factor is neutral because this is not an in rem case. The second factor, the alleged inconvenience of the federal forum, provides little, if any, support for abstention. The federal courthouse in Camden is only forty miles from the Bridgeton, Cumberland County courthouse where the state proceedings were filed and where the parties are based. Additionally, Bridgeton lies within the vicinage of the federal court in Camden. There is therefore little practical inconvenience for the parties to litigate in Camden; thus, this factor weighs against abstention. See Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer, 629 F. App'x 348, 351 (3d Cir. 2015) (characterizing the seventy-mile distance between the federal and state courthouses as "moderate additional travel time required for the

few in-court appearances that that the parties may wish to attend").

The third factor, the desirability of avoiding piecemeal litigation, weighs against abstention. The Third Circuit takes a narrow view of this factor, as "there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review." Ryan v. Johnson, 115 F.3d 193, 198 (3d Cir. 1997). Accordingly, "[t]he presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." Id. The Ryan court emphasized that a broad interpretation of the "avoidance of piecemeal litigation" factor would "swallow[ ] up the century-old principle" that "pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...." Id. at 198 (quoting Colorado River, 424 U.S. at 817). Here, Defendants identify no congressional policy indicating any intended avoidance of piecemeal litigation in this area of the law.

The next factor, the order in which jurisdiction was obtained, also weighs against abstention. This prong is "not a strict first-past-the-post test," but rather, the Court reviews "both the filing date and the advancement of the litigation in

each forum." <u>Golden Gate</u>, 629 F. App'x at 351 (citing <u>Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 21 (1983)). Here, the federal action was filed on July 10, 2015, whereas the state court action did not include NLF until July 22, 2016, over a year later.  The state court has already denied NLF's summary judgment motion, while this Court has yet to decide the motion.[9] However, discovery is complete in the federal court action, whereas it does not conclude in the state court action until October 2017.  Given that both actions are substantially advanced, this factor weighs against abstaining at this point.

The fifth factor, whether state or federal law controls, counsels in favor of abstention. While Plaintiff's action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the issues involved are standard ones of agency and contract interpretation arising under state law.  While the Third Circuit has noted that "abstention cannot be justified merely because a case arises entirely under state law," <u>Spring City Corp. v. American Bldgs. Co.</u>, 193 F.3d 165, 172 (3d Cir. 1999), here, the state court judge disqualified NLF's counsel from participating in that action based on a conflict of interest.  Resolving that issue, which is currently on appeal,

---

[9] The Court does not fault either party for its delay in resolving Plaintiff's summary judgment motion.

as well as LP Trucking and Defendant Powell's related estoppel argument, calls for a reliance on state law.

Finally, the court considers whether the state court will adequately protect the interest of the parties. This factor serves only to weigh against abstention where a state court is incapable of protecting a party's interests, see Moses H. Cone, 460 U.S. at 26-27, but here, as Plaintiff concedes, there is no question that the Superior Court can adequately protect the interests of all parties. NLF can file a summary judgment motion on apparent authority grounds in state court after discovery completes in October 2017, and does not suffer any other prejudice by having to litigate in state court only.

Upon balancing the relevant factors, the Court concludes that the "exceptional circumstances" required to abstain under Colorado River are not present in this case. Id. at 16, 19.

## 2. Declaratory Judgment Jurisdiction

The parties, at the Court's invitation prior to argument, addressed the exercise of discretionary jurisdiction in a dispute of this type under the Declaratory Judgment Act, 28 U.S.C. § 2201.[10] The DJA provides that a court "may declare the

---

[10] While Plaintiff appears to have brought its claim under the New Jersey Declaratory Judgment Act, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies in federal court. Bianchi v. Rutgers, the State Univ. of New Jersey, No. 14-131, 2016 WL 430597, at *11 (D.N.J. Feb. 3, 2016)(explaining that regardless of whether Plaintiff brings the initial claim under

rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). "The Supreme Court has long held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts." Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 (3d Cir. 2014)(quoting Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942)). This is in stark contrast to the general rule that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Reifer, 751 F.3d at 134 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). Nonetheless, although the DJA confers on district courts a "unique and substantial discretion," the exercise of that discretion must be "sound and reasoned." Reifer, 751 F.3d at 139. The DJA is commonly invoked by insurance companies "to seek a declaratory judgment on a purely state law matter" in federal court based on diversity subject matter jurisdiction. Id. at 141. In response to such cases, the Third Circuit has previously observed that "[t]he desire of insurance companies and their insureds to receive declarations in federal court on

---

the New Jersey Declaratory Judgment Act, the Federal Declaratory Judgment applies in federal court); see also Lilac Dev. Grp., LLC v. Hess Corp., No. 15-7547, 2016 WL 3267325, at *3 (D.N.J. June 7, 2016)(citations omitted)("However, even in the absence of such specificity, the Erie Doctrine would nevertheless mandate the application of the Federal Declaratory Judgment Act.").

matters of purely state law has no special call on the federal forum." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 136 (3d Cir. 2000). Consequently, it became common practice for district courts "to decline to exercise jurisdiction over declaratory judgment actions, involving an insurance company, that are solely brought on diversity, and have no federal question or interest." Reifer, 751 F.3d at 142. This principle is especially relevant because the interest of a state "in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum." Summy, 234 F.3d at 136. Where state law is uncertain or undetermined, the proper relationship between federal and state courts counsels district courts to "step back" and be "particularly reluctant" to exercise DJA jurisdiction. Id. at 136. The fact that district courts are limited to predicting—rather than establishing—state law requires "serious consideration" and is "especially important in insurance coverage cases." Id. at 135.

In Reifer, however, the Third Circuit cautioned against "declining jurisdiction per se" in such cases, because a "wholesale, 'revolving door' dismissal of such cases" would evidence neither sound nor reasoned discretion. Id. at 147 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995) and Bituminous Coal Operators' Assoc., Inc. v. Int'l Union, United

<u>Mine Workers of Am.</u>, 585 F.2d 586, 596 (3d Cir. 1978))
(additional citations omitted).  Instead, the Third Circuit
instructed district courts to consider a non-exhaustive list of
factors when determining whether to exercise jurisdiction over
such declaratory judgment actions, including:

(1) the likelihood that a federal court declaration will resolve
the uncertainty of obligation which gave rise to the
controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of
obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are
pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method
of procedural fencing or as a means to provide another forum in
a race for <u>res judicata</u>; and

(8) (in the insurance context), an inherent conflict of interest
between an insurer's duty to defend in a state court and its
attempt to characterize that suit in federal court as falling
within the scope of a policy exclusion.

<u>Reifer</u>, 751 F.3d at 146.[11]

Here, the first and second factors counsel in favor of assuming jurisdiction, as a federal court declaration would resolve the uncertainty regarding the apparent authority of Lasting Legacy to cancel Defendants' insurance policy, despite the existence of a parallel state court declaratory judgment action. Additionally, as described <u>supra</u>, litigating the dispute in Camden does not materially inconvenience the parties. However, the third, fourth, fifth, and sixth factors all counsel against assuming jurisdiction.[12]  The public interest in resolving this dispute is minimal, as the case turns on a narrow instance of cancelling (or not cancelling) an insurance policy as between private parties. There are other remedies that NLF can pursue, specifically a declaratory judgment under the New Jersey Declaratory Judgment Act.  The general policy of restraint applies here since the issues are so similar in state court, and all of the relevant parties are in that action, most notably Lasting Legacy, which is absent here.  And as described <u>supra</u>, the Court should avoid duplicative litigation, as the

---

[11] The <u>Reifer</u> court also suggested that in insurance cases, "<u>Summy</u>'s additional guidance should also be considered," as well as the <u>Brillhart</u> factors, if appropriate. <u>Reifer</u>, 751 F.3d at 146-47.
[12] There is no indication that the seventh and eighth factors are applicable to the instant matter.

state court has already denied NLF's summary judgment motion based on similar grounds.[13]

In addition to the eight-factor test, the Reifer court also endorsed the application of factors from Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942), which applies where "another proceeding was pending in state court in which all the matters in the controversy between the parties could be fully adjudicated." Those factors including inquiring "into the scope of the pending state court proceeding . . . the nature of the defenses open there . . . . whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." Id. Here, the pending state court proceeding has a wider scope than the current federal action, and there is no indication that NLF cannot satisfactorily adjudicate its declaratory judgment action in that proceeding. Given the state court's disqualification of NLF's law firm and the pending appeal, along with the fact that the liability and coverage issues in state court are broader than the issues before this Court,

_____

[13] The Court notes that for the purposes of DJA jurisdiction, "[i]t is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court." See State Auto Ins. Cos. V. Summy, 234 F.3d at 136.

particularly regarding estoppel, the Court declines DJA jurisdiction in this matter.

### B. Plaintiff's Motion for Summary Judgment

Because the Court grants Defendants' motion to dismiss on abstention grounds, it need not reach Plaintiff's motion for summary judgment on the issue of whether Plaintiff reasonably relied upon the apparent authority of Lasting Legacy in cancelling the NLF Policy prior to Defendant Powell's accident on June 11, 2014. The Court heard oral arguments on the merits of Plaintiff's summary judgment motion from both parties on June 13, 2017, but finds that given the propriety of abstaining from entertaining this declaratory judgment action when a suitable case is pending in state court, Plaintiff's motion for summary judgment shall be dismissed without prejudice.

## V.    CONCLUSION

An accompanying Order will be entered, abstaining from exercising jurisdiction under the Declaratory Judgment Act in this insurance coverage dispute, in favor of the parties proceeding with their ongoing and more comprehensive state court litigation.


**June 30, 2017**                              **s/ Jerome B. Simandle**
Date                                           JEROME B. SIMANDLE
                                               U.S. District Judge